FILED
2011 Feb-28  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LYNN H. WHITAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-1885-J |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Lynn H. Whitaker, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

  In the instant case, ALJ Kenneth Wilson determined the plaintiff met the first two tests, but concluded that while the plaintiff's seizure, anxiety and personality disorders are "severe," she did not meet or medically equal a listed impairment. [R. 13]. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## WHEN ADDITIONAL EVIDENCE IS SUBMITTED
## TO THE APPEALS COUNCIL

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case. [W]e will consider at each step of the review

4

process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Caulder, at 877. A review of the evidence submitted to the Appeals Council demonstrates that it meets all of the requirements of the regulations for consideration by the Appeals Council. Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence. The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Moreover, a "district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when the court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Astrue, 496 F.3d 1253, 1258 (11th Cir. 2007). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram at 1262.

> In <u>Bowen v. Heckler</u>, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984). We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." <u>Id.</u> at 634. . . . After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate. We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." <u>Id.</u> at 637.

<u>Ingram</u> at 1263.

## DISCUSSION

ALJ Kenneth Wilson found that the plaintiff has the following severe impairments: "Seizure disorder, Remote history of cranial trauma with subsequent right hippocampal atrophy and occipital lobe scarring, Anxiety disorder, and Personality disorder secondary to neurological involvement." [R. 13]. The plaintiff was 45 years old when the ALJ issued his decision. When the plaintiff was 18 months old, she was involved in a motor vehicle accident. A plate was placed in her right occipital area. She claims disability beginning May 14, 2005, claiming that scar tissue in her brain causes seizures and vision problems. Her treating neurologist is Robert C. Knowlton, M.D., of the Kirklin Clinic. On July 13, 2006, Dr. Knowlton sent her to Michael S. Vaphiades, D.O., a neuro-opthalmologist, at the Callahan Eye Center. Dr. Vaphiades impression was right occipital lobe scarring, secondary to trauma when the patient was 18 months old,

6

and left homonymous scotoma [blind spot] "which the patient has overcome with adaptation, given that she has had this field problem for her whole life." [R. 228].

In conjunction with her disability application, the Commissioner referred her to William B. Beidleman, Ph.D., for a December 8, 2006, comprehensive psychological evaluation. The plaintiff reported that she had been seizure free for one year, and that she has not had any inpatient or outpatient mental health treatment. [R. 229]. After a mental status examination, Dr. Beidleman diagnosed anxiety disorder and personality disorder secondary to neurological involvement:

> She appears to evidence some free-floating anxiety and performance anxiety. Her husband notes that she is easily stressed and that her stress could trigger seizures. She is currently taking Lexapro, but does not describe classic symptoms of depression. Her current Global Assessment of Functioning score is 58. She may have difficulty coping with ordinary work pressures. Prognosis for favorable response to treatment is reasonable given that she is in active treatment at this current time.
>
> Motivation and cooperation with the examination process were adequate for valid results. The medical evidence of record provided by the DDS was reviewed and these findings were considered in the overall assessment of this interesting woman.

[R. 230-231].

On August 20, 2007, Dr. Vaphiades wrote a follow-up letter to Dr. Knowlton:

> She feels her vision is a little worse. Her acuity today is 20/20-1 OD and 20/25+OS. Confrontational fields just show a little temporal constriction OS. Color vision is normal OU. Pupils are equal and reactive without an RAPD. Ductions are full. The intraocular pressures are normal. There is arcus senilis OU. The optic nerves have small cup-to-disc ratios.

7

[R. 274]. His clinical impression was the same as before, and she was to see Dr. Rosenstiel for a change in her contact lenses, and follow up with Dr. Vaphiades in one year. By March 17, 2009, Dr. Vaphiades reported to the plaintiff the results of an MRI scan. However, Dr. Vaphiades said there was "no change in the right occipital lobe damage. As you know, this is impairing your vision in both eyes to the left of midline. It is a dense field impairment and interfering with your activities of daily living." [R. 279].

In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform a reduced range of medium work. [R. 15]. He found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [R. 16].

On June 3, 2009, after the ALJ's May 19, 2009, decision, Dr. Knowlton provided a medical summary of the plaintiff's condition:

> I have followed Lynn since 2004 for a seizure disorder that had begun shortly prior to my initial visit that same year. Remarkably, Lynn had never had seizures prior to this time in spite of the fact that we discovered abnormal tissue (encephalomalacia involving the right occipital lobe) presumably due to skull fracture and head injury that I [infer] she incurred at four months of age. I initially hoped that we might be able to perform surgery to remove the focus of Lynn's seizures. They are mostly complex partial seizures, and indeed, they are disabling simply due to the fact that they cause impairment of consciousness. She has been tried on numerous medications to maximally tolerated doses and continues to have disabling seizures. Their frequency is unpredictable, at times going months without any and then at times having may be a few within a month or two. Because her seizures are not controlled, she cannot drive or operate any heavy

> machinery or work at heights.  Compounding factors for her disability are the following, 1) visual loss (left homonymous scotoma) related to the head injury at four months of age, 2) depression, and 3) excessive side effects from antiseizure medicines due to their high doses.  The latter is aggravated by the fact that we cannot reduce her medicine dosing because it will only increase her frequency of seizures.  Part of the adverse effects of her medicines are aggravation depression.  This is treated with Effexor 75 mg per day, but it is not completely effective.
>
> All in all, I would consider Lynn completely disable[d].  She vigorously tried to work during the first few years of her diagnosis of seizures.  She has lost more than one job because of her seizures.  I have no doubt that she would work if she could.

[R. 281].  The ALJ did not have the benefit of reviewing this report, but it was submitted to the Appeals Council, which issued a boilerplate denial.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous."  <u>Ingram</u> at 1262.  Dr. Knowlton is the plaintiff's neurologist with a five-year treating relationship.  Because Dr. Knowlton is a specialist[1] in the field of neurology, his opinion is entitled to more weight in this area.[2]  The Appeals Council failed to accord Dr. Knowlton's opinion appropriate weight, and failed to articulate reasons for rejecting the testimony of the plaintiff's treating neurologist.  As such, Dr. Knowlton's testimony must be taken as true.

---

[1]  Dr. Knowlton is an Associate Professor of Neurology with the UAB School of Medicine, and works with the school's Epilepsy Center.

[2]  "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist."  20 C.F.R. § 404.1527(d)5)

Therefore, the Appeals Council committed reversible error in failing to either review the plaintiff's case or to remand it for further proceedings.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 28 February 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.